**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---x

KAREL GOMEZ, JONATHAN HARVEY,
Individually and on behalf of all others
similarly situated,

Plaintiffs,

-against-

CT CORPORATION SYSTEM, INC., and
WOLTERS KLUWER UNITED STATES, INC.

Defendant.

---x

CLASS ACTION

Case No.

## CLASS ACTION COMPLAINT AND JURY DEMAND

Plaintiffs, KAREL GOMEZ, JONATHAN HARVEY ("Plaintiffs"), individually and on behalf of all others similarly situated, allege as and for the class action complaint against CT Corporation System, Inc. ("CTC" or "Defendant"), and Wolters Kluwer United States Inc., ("Wolters U.S.") (CTC and Wolter U.S. are referred to herein jointly and severally as "Defendants") as follows:

## I. INTRODUCTION

1. This action is based on a wide-ranging scheme by Defendants to create unauthorized and unlawful liens by the use of wire fraud and mail fraud in that Defendants filed through interstate wire and electronically and *via* the U.S. mail with

the respective Secretaries of State, liens under the Uniform Commercial Code ("UCC") in Florida and California, as well as other states in the United States, against individuals who never granted authority to file the said liens, in violation UCC §9-625(e) which is adopted by all states of the United States, and which in the case of Florida, is incorporated in Fla. Stat. § 679.625(5); and in the case of California, is incorporated in Cal. Com. Code § 9625(e) and (f).

2. If a person or entity files a UCC-1 financing statement ("Financing Statement") without an actual or valid security interest, and they knew or should have known it was unauthorized, then the wrongly named debtor (the person against whom it was filed) may bring a civil action for actual and statutory damages under the subsections §9-590 and §9-625 (b) and (e).

3. Plaintiffs allege that, in addition to Florida and California, each state has adopted the language of §9-625(e) and Defendants have engaged in the same wrongful practice across all states in the United States in violation of the version of §9-625(e) appurtenant to that state's UCC statutory scheme. A list of the states which have adopted the uniform statute, UCC Sec. 9-625, are annexed to this complaint as Exhibit "1."

4. The filing in each respective state is done electronically on the internet through a portal provided by the state for such filings, and such filings are then included

in the respective state's database of UCC liens and/or accessible as UCC-1 Financing Statements.

5. When a small business "merchant" seeks, as a "seller of receivables", ("Seller" hereinafter) to obtain capital from a merchant cash advance company, it enters into a Standard Merchant Cash Advance Agreement (also referred to herein as a "MCA Agreement") with the merchant cash advance company. The hallmark of these agreements is that the Seller sells a portion of its "future receivables" in exchange for an upfront lump sum payment. In traditional Factoring Agreements, a business sells current identifiable receivables, or currently identified future accounts, not a floating interest in the business' entire future revenue. These unsecured and speedily processed transactions have grown into an approximate market of $19.65 billion in 2023, and continues to expand.

6. Because these actions are unsecured, the only actual security provided by the Sellers is the granting of a security interest in the Sellers' assets, which becomes perfected upon the filing of a UCC-1 in the state of the merchant. Due to the importance of these UCC-1 filings, the merchant cash advance companies try to add additional parties ("Additional Merchants") to the Merchant Cash Advance Agreements, which would allow these "Additional Merchants" to be listed on the UCC-1 form as "Additional Debtors." The collective assets of these listed debtors are the "Collateral" upon which the security interest attaches.

7. The small business owner, as an individual, is never named in these agreements as a "Merchant," and as such, there is no security interest granted on the personal assets of these individuals.[1]

8. These businesses authorize the filing by the Merchant Cash Advance Companies of a UCC Financing Statement, in the form of a UCC-1 Financing Statement, in the respective state in which the Seller is located on the assets of the listed Merchants only.

9. These small businesses "Sellers" are referred to as "debtors" on the standard UCC-1 filing. CTC and Wolters U.S., in association with their merchant cash advance clients, operate as filers in all states for the purpose of filing the said UCC-1 liens against such small business merchants (Sellers).

10. However, in addition, CTC as a regular practice, unlawfully files UCC-1 Financing Statements against the individual owners of the various businesses, who, while a guarantor of the sale of receivables, are not listed as "Merchants" or "Sellers" in these agreements, and do not authorize CTC to file a Financing Statement listing them as a "debtor." These individuals are not named as "Sellers" or "Merchants" in the corresponding MCA Agreements, and filing such UCC-1 constitutes, in all cases, a

[1] On occasion, the small business owner, as an individual, may sign as a "personal guarantor," but *not* as to the business owner's personal collateral.

violation of UCC §9-590 (a) and UCC §9-625(e) as adopted uniformly by the various states of the United States, including but not limited to, Florida and California.

11. Such wrongful filings by Defendant CTC, upon information and belief (based on review of public records and public databases), number in the thousands.

12. Defendant CTC is listed in the UCC filings as the secured party of record and therefore is not a mere ministerial filer. Moreover, CTC affirmatively allows, facilitates, transmits and contractually supports being listed as the secured party and by doing so is liable for the claims asserted herein.

13. Such filings by Defendant CTC against the individuals who are persons who own these limited liability company merchants or corporate merchants (the listed "debtors"), are unauthorized by UCC §9-509 which sets forth, *inter alia*:

> **UCC§ 9-509. PERSONS ENTITLED TO FILE A RECORD**
>
> (a) [Person entitled to file record.]
>
> A person may file an initial financing statement, amendment that adds collateral covered by a financing statement, or amendment that adds a debtor to a financing statement ***only if*:**
>
> > **(1) the *debtor* authorizes the filing in an authenticated record or pursuant to subsection (b) or (c).**

14. Such unauthorized filings by Defendants CTC and Wolters U.S. against the individual owners of the companies that engage in this sale are filed electronically, and are violative of UCC § 9-625(e). UCC §9-625(e), sets forth, *inter alia*:

**§ 9-625. REMEDIES FOR SECURED PARTY'S FAILURE TO COMPLY WITH ARTICLE.**

(a) [Judicial orders concerning noncompliance.]

If it is established that a secured party is not proceeding in accordance with this article, a court may order or restrain collection, enforcement, or disposition of collateral on appropriate terms and conditions.

(b) [Damages for noncompliance.]

Subject to subsections (c), (d), and (f), a person is liable for damages in the amount of any loss caused by a failure to comply with this article. Loss caused by a failure to comply may include loss resulting from the debtor's inability to obtain, or increased costs of, alternative financing.

* * *

**(e) [Statutory damages: noncompliance with specified provisions.]**

**In addition to any damages recoverable under subsection (b), the debtor, consumer obligor, or person named as a debtor in a filed record, as applicable, may recover $500 in each case from a person that:**

(1) fails to comply with Section 9-208;

(2) fails to comply with Section 9-209;

**(3) files a record that the person is not entitled to file under Section 9-509(a)**.

15. Defendant CTC, is aware of these violations because when an individual person who is a non-debtor, against whom CTC has filed a UCC-1 Financing Statement objects to the Secretary of State of the state in which the filing was made, CTC receives notice of such objection and, upon information and belief, forwards these objections to their merchant cash advance clients, thereby providing

them with the opportunity to respond, which would then be forwarded by the Defendant to the particular state database that generated the objection.

16. Upon information and belief, CTC and its merchant cash advance company clients, refer to this protocol as "SPRS" (the Secured Party Representative System). In its own publications, Defendant CTC has stated that it will not reveal the true identity of the actual secured party upon inquiry and lists itself or an affiliate as the "secured party."

17. Each individual owner of, or principal in, a Seller/debtor under an MCA Agreement in which CTC filed a UCC-1 Financing Statements naming the said owner or principal, including Plaintiffs herein, has been injured and is entitled to damages under UCC §9-625 (e).

**II. JURISDICTION AND VENUE**

18. This Court has federal-question jurisdiction pursuant to 28 U.S.C. § 1331 and 18 U.S.C. § 1964(c) because Plaintiffs assert claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO") and pursuant to 28 U.S.C. §1331, a federal question is presented by virtue of the assertion of claims under RICO, 18 U.S.C. §§ 1961 through 1964. The Court also has jurisdiction based upon the other state-law claims asserted on behalf of Plaintiffs and the putative class herein under the Class Action Fairness Act, 28 U.S.C. §1332 (d) and pursuant to supplemental jurisdiction over Plaintiffs' state law claims pursuant to 18 U.S.C. §1965.

19. Venue is proper in this District under 28 U.S.C. § 1391(b)(2), 28 U.S.C. § 1391(b)(3), and 18 U.S.C. §1965 as Defendant CTC's principal place of business is in this District, and Defendants regularly transacts business in this District and many of the acts giving rise to this Complaint occurred here.

20. This Court has personal jurisdiction over Defendant Wolters U.S. pursuant to 18 U.S.C. § 1965(b).

21. This action arises, *inter alia*, under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), which expressly authorizes nationwide service of process. Where, as here, "the ends of justice require" that a foreign or out-of-state participant in the RICO enterprise be brought before the court, § 1965(b) permits personal jurisdiction regardless of the defendant's physical location or minimum contacts with the forum state. Wolters U.S. conducts substantial, continuous, and systematic business in the United States through its wholly-owned subsidiaries, including CTC which together operate and manage the UCC filing infrastructure used to carry out the unlawful and unauthorized filing scheme described herein.

22. Wolters U.S. directs, controls, manages, and profits from the U.S.-based UCC-filing operations that form the core of the enterprise. It exercises oversight, sets global policies, approves technological platforms, and receives consolidated revenues from its subsidiary, CTC.

23. Accordingly, Wolters U.S. is properly subject to personal jurisdiction in this Court because its conduct forms an integral part of the nationwide RICO enterprise, and the ends of justice require its presence.

**III. PARTIES**

24. Plaintiff Karel Gomez is a natural person residing in Miami Lakes, Florida. Plaintiff Jonathan Harvey is a natural person residing in Nevada City, California. Defendant CT Corporation System, Inc. ("CTC") is a corporation organized and existing under the laws of State of New Jersey, and maintains its principal place of business in the State of New York at 28 Liberty Street, New York, New York 10005.

25. At all relevant times, CTC transmitted the UCC filings, maintained the online UCC filing portal used to communicate with the state databases, was listed as the "secured party –as representative", provided the UCC interface for the MCA entities and acted directly and through its agents in the conduct alleged herein

26. While CTC provides a service for merchant cash advance companies seeking to file a UCC security interest with Secretary of State offices nationwide, CTC is an independent entity not affiliated with these merchant cash advance companies, upon information and belief.

27. Defendant Wolters Kluwer United States Inc., ("Wolters U.S.") is a corporation organized and existing under the laws of the State of New York, with a usual place of business at 1209 North Orange Street, Wilmington, Delaware 19801.

28. At all relevant times Wolters U.S. owned and controlled CTC, provided the technological infrastructure used in the filing of the said liens, marketed the filing service to merchant cash advance companies nationwide, connected revenue and profit from CTC, set policies and business practices enabling the mass-filing scheme, designed and operates the UCC filing architecture used by the MCA Companies, in addition to being listed as the "Contact Person" on unlawful UCC-1 filings which are subject to this complaint.

## IV. CLASS ACTION ALLEGATIONS

### A. Nationwide RICO Class

Plaintiffs bring this action on behalf of a Nationwide RICO Class defined as:

All natural persons in the United States who, within the applicable limitations period, were named as individual debtors in one or more UCC-1 Financing Statements transmitted electronically by Defendant CTC or by Defendants' related entity, Wolters Kluwer Lien Solutions where the individual did not authorize the filing and was not a debtor under any underlying Merchant Cash Advance Agreement.

### B. Nationwide UCC §9-625 Class

All natural persons whose businesses have entered an MCA Agreement, where said individuals have not authorized the filing of a UCC-1 Financing Statement individually but were nonetheless named as individual debtors in an unauthorized UCC-1 Financing Statement filed, and/or transmitted by Defendant with the Secretary of State of each State listed on Exhibit 1 in violation of said State's statutory prohibition of such filing pursuant to § 9-625(e) as adopted by the Uniform Commercial Code of that respective State.

### C. Florida Subclass

All natural persons whose businesses have entered an MCA Agreement, where said individuals have not authorized the filing of a UCC-1 Financing Statement individually but were nonetheless named as individual debtors in an unauthorized UCC-1 Financing Statement filed, and/or transmitted by Defendant with the Florida Secretary of State, in violation of Fla. Stat. § 679.625(e).

**D. California Subclass**

All natural persons whose businesses have entered an MCA Agreement, where said individuals have not authorized the filing of a UCC-1 Financing Statement individually but were nonetheless named as individual debtors in an unauthorized UCC-1 Finance Statement filed and/or transmittal by Defendant with the Secretary of State of California, in violation of Cal. Com. Code § 9625(e).

**E. Rule 23(b)(2) Injunctive Class**

Plaintiffs and the proposed Class are entitled to an injunction and/or declaratory judgment class in that Defendant has acted on grounds applicable generally to all Class members warranting declaratory and injunctive relief, including requiring Defendant to withdraw and cease filing and/or transmitting unauthorized UCC-1 Financing Statements and requiring the filing of UCC-3 statements to terminate and withdraw improper and unlawful UCC-1 Financing Statements.

**Numerosity of the Class: Fed. R. Civ. P. 23(a)(1).**

29. The proposed class is so numerous that individual joinder of all potential members is impracticable under Fed. R. Civ. P. 19 or 20. It is estimated there are in excess of approximately 100,000 Class and Subclass members throughout the United States. Although the number, location and identity of all proposed class members cannot be presently ascertained, this information is obtainable through discovery from the Defendant and publicly available records.

**Existence of Common Questions of Law and Fact: Fed. R. Civ. P. 23(a)(2) and 23(b)(3).**

30. Common questions of law and fact exist as to all members of the proposed class and predominate any and all issues of law and fact affecting individual members of the proposed class. These issues include but are not limited to:

• Whether Defendant engaged in a pattern of racketeering activity under 18 U.S.C. § 1962(c);

• Whether Defendant transmitted unauthorized filings using interstate wire communications and on occasion U.S. mail;

Whether Defendant committed the series of predicate acts of wire fraud and mail fraud, pursuant to 18 U.S.C. 1341 and 19 U.S.C. 1343.

• Whether Defendant knowingly filed false UCC-1 Financing Statements against non-debtor individuals who may be principals in the companies which are debtors under an MCA Agreement;

• Whether the Defendant's conduct injured Plaintiffs' and class members' business or property;

• Whether each Class member is entitled to statutory damages of $500 for each violation;

• Whether class members are entitled to treble damages, attorney's fees, and costs.

**Typicality of Claims or Defenses of a Definable Class: Fed. R. Civ. P. 23(a)(3).**

31. The proposed class representatives' claims and defenses are typical of the claims and defenses of proposed class members. Class claims arise out of Defendant filing and/or transmitting a UCC-1 Financing Statement against

individual business owners personally when none was authorized in the agreements entered into. There are no defenses to Plaintiffs' claims on the part of Defendant which are unique or different from the proposed class.

**Adequate Representation: Fed. R. Civ. P. 23(a)(4).**

32. The proposed class representatives have no conflicting interests with any other proposed class member. The proposed class representatives will fairly and adequately protect the interests of the proposed subclasses. The proposed class representatives' claims and the proposed class members' claims are sufficiently similar such that the interests of the proposed class members will be fairly and adequately protected in their absence. The proposed class counsel have significant experience concentrating in complex consumer class action litigation and have been appointed class counsel in other proceedings.

**Predominance of Common Questions.**

33. Questions of law and fact common to members of the class predominate over any questions affecting any individual members and a class action is superior to other available methods for the fair and efficient adjudication of the controversy as recognized by Fed. R. Civ. P. 23(b)(3).

**Superiority of a Class Action: Fed. R. Civ. P. 23(b)(3).**

34. Maintenance of a class action in one court is the most economical procedural device to litigate the claims involving the falsely fled UCC-1 liens.

Prosecution of separate actions by individual members of the class could create risk of inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class as recognized by Fed. R. Civ. P. 23(b)(1)(A).

35. Prosecution of separate actions by individual members of the class could create risk of adjudications with respect to individual members of the class which would, as a practical matter, be dispositive of the interests of the other members of the class who are not parties to the adjudications or substantially impair or impede their ability to protect their interests as recognized by Fed. R. Civ. P. 23(b)(1)(B).

36. There is a substantial likelihood that the Defendants will oppose this class action and will further act or refuse to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole pursuant to Fed. R. Civ. P. 23(b)(2).

## V. FACTUAL BACKGROUND

### Introduction

37. Beginning on or about at least January 2022, Defendant CTC filed, transmitted for filing and/or assisted in filing *via* interstate wire and/or U.S. Mail, multiple UCC-1 Financing Statements in the various United States naming Plaintiffs and members

of the Class as "debtors" in the databases of the respective Secretary of State's UCC systems in violation of law and in furtherance of the RICO predicate acts that Defendant engaged in.

38. With regard to the Florida state subclass, beginning on or about at least January 2022, Defendant CTC filed and/or transmitted and/or assisted in filing, *via* interstate wire and/or U.S. mail, multiple UCC-1 Financing Statements naming Plaintiff Gomez and members of the Florida state subclass as debtors in the Florida Secretary of State's UCC systems in violation of law including violation of UCC 679.509 and UCC 679.625(e) and (f).

39. With regard to the California state subclass, beginning on or about January 2022, Defendant CTC filed and/or transmitted and/or assisted in filing, via interstate wire and/or U.S. Mail, one or more UCC-1 Financing Statements naming Plaintiff Harvey and members of the California state subclass as debtors in the California Secretary of State's UCC systems in violation of law including violation of Cal. Com. Code Sections 9509 and 9625.

40. These filings were made electronically through state internet portals and email submissions, invoking the instrumentalities of interstate commerce.

41. Plaintiffs, and each member of the Class and Subclasses, never executed or authorized any security agreement or lien in favor of Defendant CTC, or any other party, which authorized the filing of a UCC Financing Statement against them as "debtors."

42. Defendant knew, or should have known, that these filings were false and unauthorized, yet continued to transmit and/or file them and/or assist in their filing, resulting in unlawful encumbrances.

43. Upon information and belief, CTC maintains in the SPRS database the names of each merchant cash advance entity and the UCC-1 filings made relating to each company and each individual class member and, as such, the identify of each class member is ascertainable.

44. As a service to its merchant cash advance clients, CTC offered the said companies anonymity by listing their own name on the UCC-1 form as the "Secured Party- As Representative," and publicly stating that they would refuse to provide the identity of the actual secured party, upon inquiry.

45. Defendant CTC is listed in the UCC filings as the secured party of record. Moreover, CTC affirmatively allows, facilitates, transmits and contractually supports being listed as the secured party and by doing so is liable for the claims asserted herein.

46. Plaintiffs and members of the Class and Subclasses suffered harm to their credit, reputation, and business opportunities and are entitled to damages pursuant to UCC 9-625(b) and (e). Plaintiffs and each member of the class are entitled to statutory damages of $500 per violation.

**A. Facts Relating to Plaintiff Gomez**.

**1. Sale of Receivables to Rowen Capital and Filing of Wrongful UCC-1 Financing Statement**

47. On or about March 28, 2025, Plaintiff Gomez entered into a "Sale of Future Receivables Agreement" on behalf of his company Draftpros LLC, with Rowen Capital. Plaintiff Gomez signed the Agreement on behalf of Draftpros as its "Owner." Pursuant to paragraph 12(b) of this Agreement, the Seller agreed to allow the Buyer to file "one or more UCC-1 forms to give notice that the "Purchased Amount" is the sole property of the Buyer.

48. "Exhibit A" of that Agreement added 2 additional companies as "Sellers" under this Agreement, Telcon Holdings Inc., and the W-T Group LLC. The EIN of each company is listed next to each company. Plaintiff Gomez signed on behalf of both companies as "Owner." The addendum states, "Rowan Advance Group LLC may file a UCC-1 financing statement with the appropriate Secretary of State(s) reflecting a security interest in the Future Receipts (as defined in the Agreement) of the above-listed entities. Plaintiff Gomez is not listed, individually, as an "Additional Seller."

49. While Plaintiff Gomez signed the Agreement as a "Guarantor," the Agreement is clear that only the "Sellers" were authorizing the filing of a UCC-1 form.

50. On or about March 21, 2025, CTC filed, or assisted in the filing, *via* interstate wire and/or U.S. mail, a UCC-1 Financing Statement with the Florida Secured Transaction Registry falsely and wrongfully naming Plaintiff Gomez,

personally, as "Debtor 1". This is false. Plaintiff Gomez only signed as a "Guarantor," and as such, he never agreed to have a UCC-1 form filed naming himself, personally, as a "debtor", which would thereby grant a security interest on his personal assets. On this form, the name of the "Contact Person" is WOLTERS KLUWER LIEN SOLUTIONS. The "Secured Party" is listed as "C T CORPORATION SYSTEM, AS REPRESENTATIVE." C T CORPORATION SYSTEM is a subsidiary of Wolters in the Finance and Compliance Department

**2. Gelt Standard Merchant Cash Advance Agreement and Wrongful UCC-1 Financing Statement**

51. On April 10, 2025 a second MCA Agreement was entered into with Gelt Capital. The Merchant is listed on the cover sheet as "Telcon Holdings Inc. dba Draftpros," notwithstanding these are, in fact, separate legal entities. Plaintiff Gomez is President of Telcon Holdings Inc. and Manager of Draftpros LLC. The Agreement is signed by Plaintiff Gomez as "Owner." Addendum M of this Agreement adds additional Parties as "Merchants": Draftpros LLC, The W-T Group LLC, and Pratum Construction Services LLC. Plaintiff Gomez signed on behalf on these companies as "Owner."

52. In paragraph 29 of this Agreement, the "Merchants" grant security interests to Gelt Capital in the assets of these businesses (the "Collateral").

53. While Plaintiff Gomez signed a "Guarantee of Performance" to this Agreement (pg. 13), nowhere in this guarantee does he pledge his personal assets as "Collateral."

54. On or about May 22, 2025, CTC falsely and wrongfully filed, or assisted in filing, *via* interstate wire and/or U.S. mail, a UCC-1 Financing Statement with the Florida Secured Transaction Registry on behalf of Gelt. The "Contact Person" on this form is WOLTERS KLUWER LIEN SOLUTIONS, and the "Secured Party" is listed as C T CORPORATION SYSTEM, AS REPRESENTATIVE. In "Section 11" of this form (at page 2), Plaintiff Gomez is listed as an "ADDITIONAL DEBTOR". This is false. He never signed the MCA as a "Merchant," but only as a Guarantor. He did not grant to CTC, or any affiliate, a security interest on his personal assets.

55. On May 28, 2025, Ace Recovery Group LLC sent a copy of this UCC-1 form, on behalf of Gelt, to debtors and account holders of Plaintiff Gomez, personally, and alleged to possess a valid security interest on his personal property based on this filing. The letter sent by Ace wrongfully lists Plaintiff Gomez as a "Merchant" and asserts a UCC lien based on the UCC-1 form filed by C T CORPORATION SYSTEM. Plaintiff Gomez was injured by this false statement that there was an outstanding lien on his personal assets.

56. Wolters U.S. is the database/platform that CTC uses to file the UCC-1 forms and which facilitates these companies' ability to file a UCC lien with every Secretary of State in the U.S.

**B. Facts Relating to Plaintiff Harvey**.

57. On or about November 6, 2023, Plaintiff Harvey entered into a "Forward Purchase Agreement" (sale of future receivables) with Kapitus Capital on behalf of his company, Mini Mania Inc. In paragraph 9 of this Agreement, the Seller (Mini Mania Inc.) granted a security interest on the assets of the said company. As part of this Agreement, Plaintiff Harvey signed a "Personal Guarantee of Performance", but never granted a security interest on his own personal assets.

58. On November 22, 2023, CTC wrongfully filed, or assisted in the filing of, via interstate wire, and/or U.S. mail, a UCC-1 lien with the California UCC portal on behalf of Kapitus which falsely and unlawfully named Plaintiff Harvey, individually, as a "debtor." The "Contact Person" on this form is WOLTERS KLUWER LIEN SOLUTIONS, and the stated "Secured Party" is CT CORPORATION SYSTEM, AS REPRESENTATIVE. Plaintiff Harvey never signed the MCA as a "Merchant", but rather only as a "Guarantor of Performance". He did not grant to CTC, or any other party, a security interest on his personal assets.

**VI. CLAIMS ASSERTED**

**COUNT I – VIOLATION OF FLA. STAT. § 679.625(e)**
**(As Against Defendant CTC)**

59. Plaintiff Gomez brings this Count on behalf of himself and all other Florida Subclass members.

60. Plaintiff Gomez realleges and incorporates all preceding paragraphs herein as if set forth in full herein.

61. Pursuant to Fla Stat. § 679.509(1)-(3), a person may not file a financing statement unless the debtor has authorized the filing.

62. As forestated, CTC has filed, or knowingly assisted in the filing of, thousands of UCC financing statements in the State of Florida against individuals who signed an MCA Agreement on behalf of their business entity, but who never authorized the filing of any such financing statement against themselves personally.

63. Defendant CTC's filings against Plaintiff Gomez were not authorized by Plaintiff Gomez under Fla. Stat. § 679.509. Similarly, Defendant CTC's filings against all other Florida Subclass members herein, which were not authorized to be filed against themselves individually, were all wrongful and in violation of Fla. Stat. § 679.509 and §679.625(5).

64. In all such cases, Defendant CTC knew, or had reason to know, that it was not authorized to file such UCC-1 Financing Statements because the standard form MCA Agreements plainly only authorized such filing against the business entity which was granting a security interest in its assets, and not against the owner/principal individually.

65. Under Fla. Stat. §679.625(5), Plaintiff and each member of the Florida Subclass, as a person named as a debtor in the filed record, is entitled to recover damages from the filer for such unauthorized filing.

66. Defendant CTC is the wrongful filer in each case by acting as the initiator and/or transmitter of these wrongful filings coupled with being listed as the "Secured Party- As Representative" on each UCC Financing Statement as CTC plainly stated on the UCC Financing Statement form filed with the Florida Secretary of State. In fact, the Financing Statement form is standardized and indicates that the identity of the "Secured Party's Name" must be entered in Box "3" of the form.

67. As a result of Defendant CTC's wrongful and improper UCC -1 filings, Plaintiff Gomez and members of the Florida Subclass have suffered damages as a direct and proximate result of Defendant's conduct, including harm to credit, legal expenses and the cost and time incurred to correct the false filings.

68. Additionally, under Fla. Stat. § 679.625(6), Plaintiff and each member of the Florida Subclass are entitled to statutory damages in the amount of Five Hundred Dollars ($500) for each unauthorized filing by Defendant CTC.

69. In addition, Plaintiff seeks an order on his behalf and behalf of all Florida Subclass members directing the Florida Secretary of State to terminate and expunge the false UCC-1 Financing Statements and to correct the record to show no lien is outstanding and to require the Defendant to pay for the costs of such termination and expungement.

## COUNT II – VIOLATION OF CAL. COM. CODE § 9625(e)
## (As Against Defendant CTC)

70. Plaintiff Harvey brings this Count on behalf of himself and all other California Subclass members.

71. Plaintiff Harvey realleges and incorporates all preceding paragraphs herein as if set forth in full herein.

72. Pursuant to Cal. Com. Code § 9509(a), a person may not file a financing statement unless the debtor has authorized the filing.

73. As forestated, Defendant has filed and/or initiated the filing and/or assisted in the filing of thousands of UCC financing statements in the State of California against individuals who signed MCA Agreements on behalf of their respective business entities, but did not authorize the filing of any such financing statement against themselves individually. In all such filings, CTC lists itself as the "Secured Party – As Representative."

74. Defendant CTC's filing against Plaintiff Harvey was not authorized by Plaintiff Harvey under Cal. Com. Code § 9509. Similarly, Defendant CTC's filings against all other California Subclass members herein, which were not authorized to be filed against them individually, were all wrongful and in violation of Cal. Comm. Code § 9509(a) and §9625(e), which provides a private right of action to recover damages where a filer knew, or should have known, that a UCC-1 filing was unauthorized.

75. In all such cases alleged herein, Defendant CTC knew or had reason to know it was not authorized to transmit for filing or file such UCC-1 Financing Statements because the standard form MCA Agreements plainly only authorized such filing against the business entity which was agreeing to be a debtor, and not against the owner/principal individually.

76. Under Cal. Com Code §9625(e) and (f), Plaintiff and each member of the California Subclass, as the person wrongfully named as debtor in the filed record, is entitled to recover damages from the filer for such unauthorized filing.

77. Defendant CTC is the wrongful filer in each case by the active role it played in the filing of these Financing Statements and by being listed as "Secured Party- As Representative", as CTC plainly stated on the UCC Financing Statements filed with the California Secretary of State.

78. As a result of Defendant CTC's wrongful and improper UCC-1 filings, Plaintiff Harvey and members of the California Subclass have suffered damages as a direct and approximate result of Defendant's conduct, including harm to credit, legal expenses and the cost and time incurred to correct the false filings.

79. Additionally, under Cal. Comm. Code § 9625(f), Plaintiff and each member of the California Subclass are entitled to statutory damages in the amount of Five Hundred Dollars ($500) for each unauthorized filing by Defendant CTC.

80. Because Plaintiff still has a UCC-1 Financing Statement filed against him and because his companies will likely in the future resort to MCA Agreements, Plaintiff seeks an order on his behalf and behalf of all California Subclass members directing the California Secretary of State to terminate and expunge the false UCC-1 Financing Statements and to correct the record to show no lien is outstanding and to require the Defendant to pay for the costs of such termination and expungement.

**COUNT III – NATIONWIDE CLASS CLAIM FOR VIOLATION OF ALL STATE UNIFORM COMMERCIAL CODE § 9-625(e) STATUTORY PROVISIONS ("Nationwide UCC 9 Class) (As Against Defendant CTC)**

81. Plaintiffs Gomez and Harvey reallege and incorporate all preceding paragraphs herein as if set forth in full herein.

82. Pursuant to each State Uniform Commercial Code, the section comprising § 9-625(e), is incorporated therein. A copy of each version of Section 9-625(e) is set forth on Exhibit 1 annexed hereto and incorporated herein by reference. Pursuant to the statutory provision, as adopted uniformly in each State, a person may not file a financing statement unless the debtor has authorized the filing.

83. As forestated, Plaintiffs are informed and believe that CTC has filed or knowingly assisted in the filing of, thousands of UCC financing statements in each state of the United States against individuals who signed an MCA Agreement on behalf of their business entity, but who never authorized the filing of any such financing statement against themselves personally.

84. Defendant CTC's filings against Plaintiffs Gomez and Harvey were not authorized by said Plaintiffs under their respective State's UCC § 9-625. Similarly, as to Defendant CTC's filings against all nationwide Class members herein, such individuals never authorized CTC or any other related entity to file a UCC-1 against them individually.

85. Consequently, such filings by Defendant CTC, were all wrongful and in violation of that respective State's statutory provision of §9-625 in its Uniform Commercial Code, as adopted (see Exhibit 1 annexed hereto).

86. In all such cases, Defendant CTC knew, or had reason to know, that it was not authorized to file such UCC-1 Financing Statements because the standard form MCA Agreements plainly only authorized such filing against the business entity which was granting a security interest in its assets, and not against the owner/principal individually.

87. Under each version of Section 9-625, as adopted by each State listed on Exhibit 1, Plaintiffs, and each member of the Nationwide UCC 9 Class, as a person named as a debtor in the filed record, is entitled to recover damages from the filer for such unauthorized filing.

88. Defendant CTC is the wrongful filer in each case by acting as the initiator and/or transmitter of these wrongful filings coupled with being listed as the "Secured Party- As Representative" on each UCC Financing Statement as CTC plainly stated on the UCC Financing Statement form filed with the Secretary of State of each State listed

on Exhibit 1 hereto. In fact, the Financing Statement forms are relatively standardized and indicate that the identity of the "Secured Party's Name" must be entered in Box "3" (or similar box) on the form.

89. As a result of Defendant CTC's wrongful and improper UCC-1 filings, Plaintiffs and the Nationwide UCC 9 Class have suffered damages as a direct and proximate result of Defendant's conduct, including harm to credit, legal expenses and the cost and time incurred to correct the false filings.

90. Additionally, under each respective State's § 9-625, members of the Nationwide UCC 9 Class are entitled to statutory damages in the amount of Five Hundred Dollars ($500) for each unauthorized filing by Defendant CTC.

91. In addition, Plaintiffs seek an order on their behalf and behalf of all Nationwide UCC 9 Class Members directing the Secretary of State of each respective State on Exhibit 1, to terminate and expunge the false UCC-1 Financing Statements for each injured Class Member and to correct the record to show no lien is outstanding and to require the Defendant to pay for the costs of such termination and expungement.

**COUNT IV – DECLARATORY AND INJUNCTIVE RELIEF**
**(As Against Defendant CTC)**

92. Plaintiffs reallege all preceding paragraphs.

93. A real controversy exists as to the validity of the UCC-1 filings.

94. Plaintiffs seek a declaration that the filings made by Defendants under various MCA Agreements against Plaintiffs and the California and Florida Subclasses of

individuals wrongfully listed as "debtors" because of Defendants' wrongful filings be adjudicated as void and an injunction directing their termination and preventing future unauthorized filings be entered.

**COUNT V – RICO VIOLATION (18 U.S.C. § 1962(c))**
**(As Against Defendants CTC and Wolters U.S.)**

95. Plaintiffs reallege all preceding paragraphs.

96. Plaintiffs bring this Count on behalf of a nationwide class of individuals who have been the subject of UCC-1 Financing Statements which Defendants CTC and Wolters U.S. have wrongfully filed, assisted in the filing of, or transmitted based on underlying MCA Agreements between companies owned by the said individuals and merchant cash advance clients of CTC.

97. Defendants CTC and its parent, Defendant Wolters U.S. operate and manage a nationwide enterprise that files, prepares, and transmits unauthorized and fraudulent UCC-1 financing statements in every state.

98. Defendant CTC with the knowledge and assistance of Wolters U.S. knowingly transmits, files, or assists in the filing of, wrongful UCC-1 liens without debtor authorization by using interstate wire communications in furtherance of a scheme for profit, and in enterprise with other entities, while concealing the identity of the true secured party by listing themselves as "Secured Party- As Representative". CTC and/or Wolters U.S. explicitly refuse to divulge the true secured party's identity, demonstrating deliberate concealment.

99. Defendants market, design, and operate the filing technology and automated bulk systems that enable this fraudulent scheme. They profit from each filing, maintain the concealment, and transmit thousands of false filings electronically, constituting wire fraud.

100. Defendant CTC is a "person" within the meaning of 18 U.S.C. 18 U.S.C. §1961(3).

101. Defendant Wolters U.S. is a "person" within the meaning of 18 U.S.C. 18 U.S.C. §1961(3).

**Defendant's False and Misleading Pattern of**
**Filing, or participating in the filing of Wrongful UCC-1 Financial Statements**

102. As forestated, Defendants have filed, assisted in the filing, or transmitted thousands of UCC financing statements throughout the United States against individuals, including Plaintiffs herein, who signed an MCA Agreement on behalf of their business entities, but did not authorize the filing of any such financing statement against themselves individually.

103. Such improper filings were engaged in by Defendants with each state Secretary of State's office via interstate wire and/or U.S. mail, including the filings engaged in against Plaintiffs herein.

104. Defendant CTC's filings in each case were not authorized by the class member, including Plaintiffs. These unauthorized filings were false, unlawful, and in

furtherance of a scheme for profit using interstate wire, and in enterprise with other entities.

105. In all such cases alleged herein, Defendants CTC and Wolters U.S. knew or had reason to know that they were not authorized to file such UCC-1 Financing Statements because the standard form MCA Agreements plainly only authorized such filing as against the business entity.

106. In addition, CTC had been notified many times of the unauthorized filings due to the aforementioned objection system in place in many official state UCC databases.

107. As a result of Defendant CTC's wrongful and improper UCC-1 filings, Plaintiffs and members of the Class have suffered damages as a direct and approximate result of Defendant's conduct, including harm to credit, legal expenses and the cost and time incurred to correct the false filings.

**The Predicate Acts Engaged in By Defendant**

108. Pursuant to 18 U.S.C. §1341, the sending of deceptive or falsified documents, via the U.S. mail constitutes a mail fraud. Pursuant to 18 U.S.C. §1343, transmitting and/or causing to be transmitted false or misleading documents, materials and data across state lines by wire to facilitate a deceptive scheme constitutes wire fraud.

109. Defendant CTC has, as a regular pattern and practice, knowingly and consistently filed, or electronically transmitted for filing, or caused to be transmitted, false and misleading UCC-1 Financing Statements *via* interstate wire and/or U.S. mail as

part of a scheme to obtain money by means of false or fraudulent pretenses or representations. The false and misleading transmissions and/or filings with respect to Plaintiffs, as aforestated, are illustrative and examples of the thousands of wire transmissions and/or filings throughout the nation made by Defendants.

110. Defendant Wolters U.S. has assisted and participated in the acts in violation of Section §§1341 through 1343, by facilitating CTC's efforts to engage in the illegal and improper filings and/or transmissions.

111. Defendants have engaged in numerous predicate acts within the requisite ten year period, which are part of an ongoing continuous pattern related to the enterprise.

112. Defendants conducted or participated in an enterprise engaged in interstate commerce through this pattern of racketeering activity involving wire fraud under 18 U.S.C. § 1343 and mail fraud under 18 U.S.C. § 1341.

113. Predicate acts include electronic transmission and/or filing of false UCC-1 statements via interstate internet and email transmissions.

**Defendants Acted Through an Enterprise**

114. Defendants engaged in the pattern of racketeering alleged herein through three distinct enterprises.

**The State Secretary of State as a Non-Party Governmental Entity Enterprise**

115. First, the various non-party state Secretaries of State each maintain a portal for electronic filings which served to facilitate Defendants' wrongful scheme of filing

false and misleading UCC-1 Financial Statements. In engaging in their pattern of racketeering, Defendants utilized the self-verification nature of the non-party Secretary of State portals and databases to file, or participating in the filing of, wrongful UCC-1 Financing Statements. As such, each non-party Secretary of State served as an enterprise through which Defendants could commit their scheme, pursuant to 18 U.S.C. §1961(4).

116. At all relevant times, the Secretary of State of each State's Division of Corporations, including the electronic business-filing and records portal (the "SoS Enterprise" hereinafter), constituted an **"**enterprise" within the meaning of 18 U.S.C. § 1961(4). The SoS Enterprise were the governmental legal entities which administered the formation, maintenance, and public dissemination of business records, and regularly engaged in interstate commerce, including by transmitting electronic filings, confirmations, certifications, fee payments, and database records across state lines.

117. Defendants CTC and Wolters U.S. are distinct from the SoS Enterprise and are not employees or officials thereof. As alleged herein, Defendants conducted and participated in the conduct of the SoS Enterprise's affairs, within the meaning of 18 U.S.C. § 1962(c), by repeatedly exploiting the enterprise's core filing and verification processes—through the submission of materially false electronic filings and related communications—to execute and conceal a scheme to defraud, thereby using the SoS Enterprise as the instrumentality and vehicle of Defendants' racketeering activity.

118. With respect to Plaintiff Gomez and the Florida Subclass, the Secretary of State of the State of Florida constituted an SoS Enterprise herein.

119. With respect to Plaintiff Harvey and the California Subclass, the Secretary of State of the State of California constituted an SoS Enterprise herein.

**The Association-In-Fact Enterprise Comprised of Defendants**

120. Second, Defendants conducted and participated, directly and indirectly, in the conduct of an association-in-fact enterprise, engaged in interstate commerce consisting of its officers, agents and affiliated entities, including Wolters U.S. (which served as the platform through which Defendants could facilitate it scheme of UCC filings), and its merchant cash advance company clients, all within the meaning of 18 U.S.C. §1961(4).

**An Association-In-Fact Enterprise Comprised of Defendant CTC and the Non-Party Merchant Cash Advance Entities**

121. Third, Defendants engaged in interstate commerce through an enterprise-in-fact vehicle which consisted of and between the Defendant CTC and the numerous non-party merchant cash advance companies that associated with the Defendants in order to carry out this scheme.

**Defendants Engaged in the Pattern and Practice of Racketeering**

122. Through the enterprise, Defendants engaged in a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c) by committing multiple, extensive and

continuous predicate acts of wire fraud under 18 U.S.C. § 1343 and mail fraud under 18 U.S.C. § 1341, including the wrongful filings against the Plaintiffs herein.

123. The predicate acts include, but are not limited to:

a. Transmitting and/or causing to be transmitted and/or filing false UCC-1 Financing Statements through the electronic filing portals *via* the interstate internet and/or mailings, with the (i) Florida Secretary of State; (ii) California Secretary of State; and (iii) the Secretary of State of each state in the United States; and

b. Sending email communications containing knowingly false information to those state offices to effectuate the filings; and

c. Using interstate electronic systems to publish and disseminate the fraudulent liens for the purpose of coercing, harassing, or obtaining unlawful advantage over Plaintiffs.

124. Each such transmission constitutes a separate wire-fraud predicate act, collectively forming a pattern under 18 U.S.C. § 1961(5) because the acts are related and continuous.

125. Plaintiffs and the class were injured in their business and property by reason of Defendants' racketeering conduct, including harm to credit, business opportunities, and legal expenses incurred to clear title and remove the false liens.

126. Plaintiffs and the class were injured.

127. Pursuant to 18 U.S.C. § 1964(c), Plaintiffs seek treble damages, costs, and reasonable attorney's fees.

128. Plaintiffs were injured in their business and property by reason of Defendants' racketeering conduct and seek treble damages, costs, and attorney's fees.

**COUNT VI – RICO CONSPIRACY (18 US.C. § 1962(d))**
**(As Against Defendants CTC and Wolters U.S.)**

129. Plaintiffs reallege and incorporate all preceding paragraphs.

130. Defendants knowingly and willfully combined, conspired, and agreed with other persons or entities, known and unknown, to conduct and participate in the affairs of the CTC enterprise through a pattern of racketeering activity, including the predicate acts described above.

131. Defendants and their co-conspirators committed or agreed that one or more of them would commit at least two predicate acts as defined with particularity above, of racketeering to further the conspiracy.

132. Plaintiffs and the class suffered the injuries described above as a direct and foreseeable result of Defendants' RICO conspiracy.

133. Plaintiffs and the class were injured in their business and property by reason of Defendants' racketeering conduct and the conspiracy, including harm to credit, business opportunities, and legal expenses incurred to clear title and remove the false liens.

134. Plaintiffs and the class were injured and are entitled to treble damages.

135. Pursuant to 18 U.S.C. § 1964(c), Plaintiffs are entitled to treble damages, costs of suit, and attorney's fees.

**COUNT VII - VIOLATION OF CALIFORNIA'S UNFAIR COMPETITION LAW ("UCL"))**
**(Cal. Bus. & Prof. Code 17200, *et seq*.**
**(Brought by Plaintiff Harvey on behalf of the California Sub-class)**

136. Plaintiff Harvey hereby incorporates by reference the allegations contained in all preceding and subsequent paragraphs of this Complaint as though set forth fully herein.

137. Plaintiff Harvey asserts this cause of action on behalf of himself, and on behalf of the California Sub-class.

138. California's Unfair Competition Law ("UCL") prohibits and makes actionable any unlawful, unfair, or deceptive business practice. Defendants' actions, as alleged herein, in the improper filing, and/or transmitting for filing of, unauthorized and unlawful UCC-1 Financing Statements placing a lien on assets of Plaintiff Harvey and those of the individual class members, constitute an unlawful and deceptive business practice and a violation of the UCL.

139. Defendants' conduct violates all three UCL prongs. Defendants' conduct was fraudulent in that it was likely to deceive merchants, lenders, and creditors and involved concealment of the true secured party, as admitted in publications. It was

unlawful as it violated the various sections of the Cal. Com. Code, including UCC provisions embodied in Cal. Com. Code §§ 9625(e) and (f) and Cal. Com. Code § 9509 and thereby violated the aforestated filing statutes. It was immoral, unethical, and injures competition and harmed and continues to harm the California credit markets.

140. Plaintiff Harvey has standing to bring this Count under Business and Professions Code § 17204 because he has suffered injury in fact and lost money or property as a result of Defendant CTC's unlawful conduct, including but not limited to legal expenses and costs and time incurred to correct false UCC-1 filings and the harm to credit and business opportunities caused by the public filing of unauthorized liens.

141. Plaintiff Harvey brings this UCL claim on behalf of a California Subclass defined as:

> All natural persons whose businesses have entered an MCA Agreement, where said individuals have not authorized the filing of a UCC-1 Financing Statement individually but were nonetheless named as individual debtors in an unauthorized UCC-1 Financing Statement filed and/or transmitted by Defendant with the California Secretary of State.

142. Plaintiff Harvey and the California Subclass never executed or authorized any security agreement or lien granting a security interest in their personal assets that would authorize

143. Defendant CTC's conduct constitutes "unlawful" business acts and practices because it violates Cal. Comm. Code § 9509(a) and 9625(e)–(f).

144. The Cal. Comm. Code § 9509(a) prohibits filing a financing statement unless the debtor has authorized the filing. Plaintiff Harvey and members of the California Subclass did not authorize the filing of any financing statement naming them individually as a debtor.

145. The Cal. Comm. Code § 9625(e)–(f) provides a damages remedy where a filer knew or had reason to know a filing was unauthorized. Defendant CTC was not authorized to file or transmit filings against individual owners/principals where the standard form MCA agreements authorized filings, if at all, only against the business entity.

146. Because Defendant's conduct violates these statutes, it also constitutes unlawful conduct actionable under the UCL.

147. Defendant CTC's conduct constitutes "unfair" business acts and practices because it causes substantial injury to Plaintiff and the California Subclass that is not outweighed by countervailing benefits and that offends the public policies embodied in California's UCC authorization requirements.

148. Defendant's practice of filing UCC-1 records naming individuals as debtors without authorization imposes unlawful encumbrances and foreseeably

harms credit, reputation, and business opportunities, and forces affected individuals to spend money and time to correct false public filings.

149. Defendant's "Secured Party – As Representative" practice further entrenches the harm by obscuring the true secured party of the false filings.

150. By filing UCC-1 financing statements naming Plaintiff Harvey and the other individual California Subclass members as "debtors," Defendant CTC represented to the public—through California's official UCC records—that those individuals granted valid security interests in personal assets, when they did not.

151. This conduct is likely to mislead lenders, counterparties, and other market participants reviewing the UCC record, and thereby impairs the credit worthiness and business reputation of Plaintiff and members of the California Subclass.

152. As a direct and proximate result of Defendant's UCL violations, Plaintiff and the California Subclass suffered injury including harm to credit and reputation, lost business opportunities, and out-of-pocket losses such as legal expenses and the costs incurred to correct false filings.

153. Plaintiff seeks an order enjoining Defendant CTC from filing, transmitting for filing, assisting in filing, or causing to be filed any UCC-1 financing statement in California naming an individual as a debtor unless that individual has authorized the filing under California Commercial Code § 9509(a).

154. Plaintiff further seeks affirmative injunctive relief requiring Defendant CTC to take all steps necessary to cause the termination and expungement of unauthorized filings naming Plaintiff and California Subclass members as individual debtors and to correct the record to reflect no unauthorized lien remains, including directing the appropriate termination/expungement process with the California Secretary of State.

155. Plaintiff alleges a real and immediate threat of repeated injury sufficient to support injunctive relief because Plaintiff and members of the California Subclass still have a UCC-1 financing form pending and, given the nature of their business financing needs, their companies will likely resort to MCA agreements in the future, making recurrence of Defendant's challenged practices likely absent injunctive relief.

156. Plaintiff and the California Subclass do not seek compensatory damages under this Count but, instead, seek only restitution and/or disgorgement to the extent cognizable, in additional to injunctive and equitable relief asserted herein.

157. Plaintiff Harvey and the California Sub-class members are entitled to and do seek an injunction enjoining Defendants from continuing to engage in the alleged materially unlawful and misleading conduct, as well as penalties for any such subsequent violations, and for such additional relief authorized under the law.

## VII. PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs Karel Gomez and Jonathan Harvey respectfully request judgment against Defendants as follows:

(a) A proposed Order pursuant to Fed. R. Civ. P. 23(c) certifying the class and/or subclass as defined herein with such modifications, if any, to the proposed certification as required by the Court for the efficient and equitable administration of justice in this proceeding;

(b) An Order appointing the proposed class representatives as representative of the proposed Class and Subclass and designating the law firm of Kantrowitz, Goldhamer & Graifman, P.C. as counsel for the proposed class pursuant to Fed. R. Civ. P. 23(g);

(c) Judgment for the proposed class representatives and proposed Class and Subclass members against the Defendants on all issues and counts;

(d) Actual and statutory damages for the proposed class representatives and proposed Class and Subclass members, including but not limited to multiple damages, together with interest, prejudgment interest, costs and attorneys' fees;

(e) Restitution of incidental expenses incurred by the proposed class representatives and proposed Class and Subclass members, including but not

limited to terminating and expunging any and all wrongful UCC-1 Financing Statements filed in the Offices of the various Secretaries of State including but not limited to California and Florida; and

(f) Declare Defendant CTC's UCC-1 filings unauthorized and void;

(g) Award actual and statutory damages under Florida and California law to the Plaintiffs and the Florida and California subclasses;

(h) Award treble damages to Plaintiffs against Defendants under RICO (18 U.S.C. § 1964(c));

(i) Enjoin Defendants from filing future unauthorized UCC-1 Financing Statements;

(j) Award reasonable attorney's fees, expert fees and costs; and

(k) Grant such further relief as the Court deems just and proper.

## REQUEST FOR JURY TRIAL

The proposed class representatives and proposed Class and Subclass members request trial by jury on all issues and counts.

Dated: January 30, 2026

Gary S. Graifman, Esq.
Daniel Edelman, Esq.
**KANTROWITZ, GOLDHAMER & GRAIFMAN, P.C.**

135 Chestnut Ridge Road
Montvale, NJ 07645
Tel: (201) 391-7000
ggraifman@kgglaw.com
dedelman@kgglaw.com

***Attorneys for Plaintiffs***

# Exhibit 1

# EXHIBIT 1

## State-by-State Citations for UCC § 9-625(e)

| **Jurisdiction** | **Citation** |
|---|---|
| Alabama | Ala. Code § 7-9A-625(e) |
| Alaska | Alaska Stat. § 45.29.625(e) |
| Arizona | Ariz. Rev. Stat. § 47-9625(E) |
| Arkansas | Ark. Code § 4-9-625(e) |
| California | Cal. Com. Code § 9625(e) |
| Colorado | Colo. Rev. Stat. § 4-9-625(e) |
| Connecticut | Conn. Gen. Stat. § 42a-9-625(e) |
| Delaware | 6 Del. C. § 9-625(e) |
| District of Columbia | D.C. Code § 28:9-625(e) |
| Florida | Fla. Stat. § 679.625(5) |
| Georgia | O.C.G.A. § 11-9-625(e) |
| Hawaii | Haw. Rev. Stat. § 490:9-625(e) |
| Idaho | Idaho Code § 28-9-625(e) |
| Illinois | 810 ILCS 5/9-625(e) |
| Indiana | Ind. Code § 26-1-9.1-625(e) |
| Iowa | Iowa Code § 554.9625(5) |
| Kansas | Kan. Stat. Ann. § 84-9-625(e) |
| Kentucky | Ky. Rev. Stat. § 355.9-625(e) |
| Louisiana | La. Rev. Stat. § 10:9-625(e) |
| Maine | Me. Rev. Stat. tit. 11, § 9-1625(5) |
| Maryland | Md. Code, Com. Law § 9-625(e) |

| | |
|---|---|
| Massachusetts | Mass. Gen. Laws ch. 106, § 9-625(e) |
| Michigan | Mich. Comp. Laws § 440.9625(5) |
| Minnesota | Minn. Stat. § 336.9-625(e) |
| Mississippi | Miss. Code § 75-9-625(e) |
| Missouri | Mo. Rev. Stat. § 400.9-625(e) |
| Montana | Mont. Code § 30-9A-625(e) |
| Nebraska | Neb. Rev. Stat. U.C.C. § 9-625(e) |
| Nevada | Nev. Rev. Stat. § 104.9625(5) |
| New Hampshire | N.H. Rev. Stat. § 382-A:9-625(e) |
| New Jersey | N.J. Stat. § 12A:9-625(e) |
| New Mexico | N.M. Stat. § 55-9-625(e) |
| New York | N.Y. U.C.C. Law § 9-625(e) |
| North Carolina | N.C. Gen. Stat. § 25-9-625(e) |
| North Dakota | N.D. Cent. Code § 41-09-94(5) |
| Ohio | Ohio Rev. Code § 1309.625(E) |
| Oklahoma | Okla. Stat. tit. 12A, § 1-9-625(e) |
| Oregon | Or. Rev. Stat. § 79.0625(5) |
| Pennsylvania | 13 Pa. Cons. Stat. § 9625(e) |
| Rhode Island | R.I. Gen. Laws § 6A-9-625(e) |
| South Carolina | S.C. Code § 36-9-625(e) |
| South Dakota | S.D. Codified Laws § 57A-9-625(e) |
| Tennessee | Tenn. Code § 47-9-625(e) |
| Texas | Tex. Bus. & Com. Code § 9.625(e) |
| Utah | Utah Code § 70A-9a-625(e) |
| Vermont | 9A V.S.A. § 9-625(e) |
| Virginia | Va. Code § 8.9A-625(e) |

| | |
|---|---|
| Washington | Rev. Code Wash. (RCW) § 62A.9A-625(e) |
| West Virginia | W. Va. Code § 46-9-625(e) |
| Wisconsin | Wis. Stat. § 409.625(5) |
| Wyoming | Wyo. Stat. § 34.1-9-625(e) |